**James A. LONG, Plaintiff,**

v.

**Anthony M. FRANK, Postmaster General, Defendant.**

**No. CV–90–3819.**

United States District Court, E.D. New York.

Dec. 23, 1992.

James A. Long, pro se.

Warren Ausubel, Asst. U.S. Atty., Brooklyn, N.Y., for defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Plaintiff *pro se* James Long filed his complaint in this age discrimination action in November of 1990. He alleges that the United States Postal Service (the "Postal Service" or the "Agency") terminated his employment in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623. As a result of this wrongful termination, Long seeks overtime pay with interest and compensation for the legal services he has received to date.

In this motion, the government, on behalf of Postmaster General Anthony M. Frank, asserts that Long's age discrimination claims should be dismissed with prejudice as barred by the doctrines of res judicata and collateral estoppel. Arguing that plaintiff seeks relief identical to that which he previously sought in his appeal to the Federal Circuit and that his claim for this relief arises out of the same transaction that formed the basis for the Federal Circuit claims, the government contends that it is entitled to summary judgment. Plaintiff responds by arguing, in essence, that the Federal Circuit lacked jurisdiction over any claims relating to discriminatory conduct—including those for overtime back pay and attorneys fees.[1] For the following reasons, this court hereby grants in part and denies in part defendant's motion for summary judgment.

## FACTS

A consideration of the somewhat entangled history of plaintiff Long's action is essential to deciding this motion. On July 20, 1982, the Postal Service issued a Notice of Proposed Removal informing Long that they intended to terminate his employment as a letter carrier on the grounds that he had assaulted a fellow worker. (Declaration of Charles Dudek, Appeals Review Coordinator, ¶ 3(a) & Exh. A)[2] Shortly thereafter—on August 6, 1982, to be precise—the Postal Service issued a Letter of Decision. (Dudek Decl. ¶ 3(b) & Exh. B) This letter stated that the Service had considered Long's response to the charges against him but found that his removal was necessary "to promote the efficiency of the Service." Long was advised that his employment would end on August 27, 1982 and that he had the right to appeal this decision to the Merit Systems Protection Board ("MSPB"). (Dudek Decl. ¶ 3(b) & Exh. B) This Board is an adjudicative body which hears administrative appeals of adverse personnel actions rendered against federal employees. *See generally United States v. Fausto*, 484 U.S. 439, 443–49, 108 S.Ct. 668, 671–74, 98 L.Ed.2d 830 (1988) (discussing MSPB).

On August 16, 1982, Long filed an EEO complaint with his employer. (Dudek Decl. ¶ 4 & Exh. C) He also filed a grievance under his collective bargaining agreement (denied on September 16) and an appeal with the MSPB. On April 19, 1983, the MSPB reduced plaintiff's dismissal to a 30–day suspension. (Dudek Decl. ¶ 6 & Exh. E) Long then filed a complaint with the EEOC on April 25, 1983, alleging (1) discrimination on the basis of race and reprisal (prior EEO complaints) in violation of Title VII and (2) discrimination based on his age of 44 years in violation of the ADEA. On July 18, 1983, the Postal Service issued a Notice of Settlement to plaintiff which showed that he was paid $9,331.49 in back

---

**1.** In his memorandum, plaintiff also argues that this court should issue a default judgment against the government because his discovery requests were not timely answered; that the Solicitor General's waiver of the government's right to file a response to his petition for certiorari to challenge the Federal Circuit's decision denied him due process; and that counsel should have been appointed to represent him in this action. These three arguments may be dismissed summarily: first, Magistrate Judge Azrack stayed all discovery in this action until the resolution of this motion; second, the Solici-

tor General's waiver in no way interfered with plaintiff's right to be heard; and third, counsel in this case was appointed and then relieved under Rule 4(a)(v) of the Rules Governing Procedures for Appointment of Attorneys in Pro Se Civil Actions.

**2.** The history of his employment relationship is set forth at length in the EEOC decision. Since the Dudek declaration contains two paragraphs numbered "3," the first is referred to as "3(a)" and the second as "3(b)" to avoid confusion.

pay, spanning the period from August 27, 1982—the date of his dismissal—to April 29, 1983—the date of his reinstatement, less the thirty-day suspension period. (Dudek Decl. ¶ 8 & Exh. G) On September 27, 1983, the MSPB issued an addendum decision dismissing Mr. Long's request for attorneys fees on the ground that it was not timely filed. (Dudek Decl. ¶ 9 & Exh. H)

In a decision rendered nearly two years later—on September 20, 1985—the EEOC found that the Postal Service had discriminated against plaintiff by terminating his employment for reasons related to his race and his prior involvement in EEOC proceedings; however, the Commission found no evidence that this termination was based on his age. (Dudek Decl.Exh. I) The EEOC ordered the Postal Service to compensate Long for the 30–day suspension period and also awarded reasonable attorneys fees. (Dudek Decl.Exh. I) This opinion was affirmed, with slight modification, upon the Agency's request for rehearing. (Dudek Decl. ¶ 11 & Exh. J) [3]

Despite initially denying as untimely plaintiff's fee request, the MSPB issued an addendum on June 12, 1987 awarding $6,525 to plaintiff's attorney, Philip Kaplan, in accordance with the EEOC order. (Dudek Decl. ¶ 12 & Exh. K) Both this sum and the back pay award were paid by September of 1987. (Dudek Decl. ¶¶ 13–14 & Exhs. L, M) The MSPB responded to Long's subsequent claims for overtime back pay and payment of the fee award to him personally (as opposed to his attorney) by denying the overtime request and determining that the fees were properly paid to Mr. Kaplan. (Dudek Decl. ¶¶ 16–17 & Exhs. O, P) With respect to plaintiff's request for direct payment of the fee award, the MSPB stated:

> The record in this and the previous appeals shows that the appellant's attorney fees were paid by the agency. The enclosures with the present complaint do not negate or dispute the fact that there was payment. The fees were paid to the attorney, who represented the appellant in his appeal before the Board. The payment was made in accordance with the initial decision. The appellant did not seek a petition for review.

> The award was made in accordance with the rule that an award of attorney fees must be made to the attorney. *Jensen v. Department of Transportation,* 858 F.2d 721, 724 (Fed.Cir.1988); *Blessin v. Department of the Navy,* 26 M.S.P.R. 615, 617 (1985). Recovery of attorney fees by a client from his attorney must be sought in a forum other than the Board. *Jensen,* 858 F.2d at 724; *McAlear v. Merit Systems Protection Board,* 806 F.2d 1016, 1017 (Fed.Cir. 1986).

(Dudek Decl.Exh. O at 4) The MSPB denied the motion for overtime back pay as untimely based on the following reasoning:

> The appellant seeks overtime pay for a nine-month period in 1982 and 1983. The agency responded to this appeal with a motion to dismiss as untimely. It submitted its recapitulations of payment dated July 18, 1983 (gross payment, $14,-156.55; net payment, $9,331.49) and August 26, 1987 (gross payment, $1,753.24; net payment, $1,114.51). Agency file, exhibits 1 and 2, case file, tab 3....

> The appellant has utilized the Board's enforcement procedures regarding attorney fees. He has also utilized the appeals process to EEOC. He is familiar with the appeal process and questions of timeliness. In part, in the case at bar, he seeks overtime payments from the EEOC decision that reversed the thirty-day suspension. It is the EEOC proceeding that resulted in the 1987 payment. It is the Board's decision that is the basis for the 1983 payment....

> The agency's notice of compliance to the appellant was made on July 18, 1983. The notice contained a recapitulation of the sums withheld for taxes and benefits and the gross and net amounts. Any petition for enforcement filed more than 30 days after the date of service of com-

---

**3.** The final decision issued on December 19, 1986 did not alter plaintiff's relief but revised the previous order with respect to disciplinary measures to be taken against the "alleged discriminating official" ("ADO") and training.

pliance must contain a statement and evidence showing good cause for the delay and a request for an extension of time to file. 5 C.F.R. § 1201.182(a). (Dudek Decl.Exh. P at) The MSPB declined to review these determinations. (Dudek Decl. ¶ 18 & Exhs. Q, R)

On October 19, 1990, Long filed a complaint in the United States Court of Claims seeking attorneys fees and overtime back pay pursuant to the EEOC decision issued on December 19, 1986; explaining that it lacked jurisdiction over MSPB appeals, the Court of Claims transferred Long's action to the United States Court of Appeals for the Federal Circuit. (Dudek Decl.Exh. S) At oral argument plaintiff advised this court that he indicated, in response to questions on the standard questionnaire supplied by the Federal Circuit to MSPB appellants, that his case did not involve claims of discrimination. In its decision of March 11, 1991, the Federal Circuit approved the MSPB's holding on attorney fees stating:

> The Board correctly held that the Postal Service should have paid the fee award to Mr. Long's attorney. *Jensen v. Department of Transportation*, 858 F.2d 721, 724 (Fed.Cir.1988). Moreover, the Board is not the appropriate forum for disputes between attorneys [sic] and clients over fees.

*Long v. United States Postal Service*, 930 F.2d 38 (Table), 1991 WL 30240, *1, 1991 U.S.App. LEXIS 3961, *3 (Nos. 91–3029, 91–3042, 91–3043, slip op. (March 11, 1991 Fed.Cir.)) (attached as Exh. T to Dudek Decl.). In addition, the court found that Long failed to show good cause for filing his petition to enforce the Title VII back pay award in an untimely manner, stating:

> Mr. Long filed his petition for enforcement of the back pay award more than 6 years after service of the Postal Service's notice of compliance. His petition failed to show good cause for delay. Thus, the Board did not err in dismissing Mr. Long's untimely petition.

*Id.*

## DISCUSSION

The issue to be determined by this court is whether the Federal Circuit's decision affirming the MSPB and thereby denying plaintiff's requests for attorneys fees and overtime back pay precludes this court from considering his age discrimination action. The government argues that because plaintiff's claims in this case arise out of the "same transaction" and seek the same relief as did the claims before the Federal Circuit, the doctrine of res judicata bars this suit. Long responds that res judicata does not apply to this action since the Federal Circuit lacked jurisdiction over his ADEA claims, intimating that any ruling made by that court was wholly unrelated to the relief now sought.

▆ As an initial matter, administrative proceedings in ADEA actions, just as in Title VII actions, do not enjoy preclusive effect. *Astoria Federal Savings & Loan Ass'n v. Solimino*, —— U.S. ——, ——, 111 S.Ct. 2166, 2171, 115 L.Ed.2d 96 (1991). Therefore, had plaintiff not appealed the MSPB determination to the Federal Circuit, he presumably could have pursued his discrimination claims in this court since all litigation up until the appeal was administrative. Turning to the issue of preclusion, the Supreme Court has explained that a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981). The justification for the doctrine of res judicata is that " '[p]ublic policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties.' " *Id.* at 401, 101 S.Ct. at 2429 (*quoting Baldwin v. Traveling Men's Ass'n*, 283 U.S. 522, 525, 51 S.Ct. 517, 518, 75 L.Ed. 1244 (1931)).

The Second Circuit applies res judicata to bar a second suit if the two actions stem from the same transaction or series of transactions irrespective of the suits' underlying legal theories. *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir.1992)

(petition for certiorari filed Nov. 9, 1992). In the *Woods* case, plaintiff alleged that her employer had terminated her employment on the basis of race and gender; she originally filed an EEOC complaint and soon thereafter commenced an action in the Western District of New York alleging violations of Section 301 of the Labor Management Relations Act. After the court granted summary judgment in defendant's favor and the EEOC issued a right-to-sue letter, plaintiff filed a second action, also in the Western District, this time based on Title VII. *Id.* at 38. Relying on Supreme Court case law, the Second Circuit stated:

> "[A] judgment upon the merits in one suit is res judicata in another where the parties and subject-matter are the same, not only as it respects matters actually presented to sustain or defeat the right asserted, but also as respects any other available matter which might have been presented to that end."

*Id.* at 38 (*quoting Grubb v. Public Utils. Comm'n of Ohio*, 281 U.S. 470, 50 S.Ct. 374, 74 L.Ed. 972 (1930). The *Woods* court went on to explain that the

> identity of facts surrounding the occurrence ... constitutes the cause of action, *not the legal theory upon which [plaintiff] chose to frame her complaint.*

*Id.* at 39 (emphasis added). The court therefore held that plaintiff's Title VII action was barred by res judicata. *Id.* at 40–41; *see also Saud v. Bank of New York*, 929 F.2d 916, 919 (2d Cir.1991) (" '[I]t is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies.' ") (*quoting Expert Elec., Inc. v. Levine*, 554 F.2d 1227, 1234 (2d Cir.), *cert. denied*, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977)).

■ Plaintiff's current action asserts ADEA violations—presumably as an appeal of the EEOC determination that no age discrimination took place—whereas his action in the Federal Circuit sought review of the MSPB rulings regarding overtime pay and remuneration for legal fees. Nevertheless, as in *Woods*, the transaction underlying Long's two actions is identical—both suits stem out of the same 1982 conduct by the Postal Service that was reviewed by the EEOC. In addition, plaintiff now seeks the same relief as he has been seeking throughout this litigation's protracted history. What distinguishes this case from *Woods*, however, is the fact that Long could *not* have presented to the Federal Circuit the discrimination claims upon which he now seeks to recover; for this reason, this court may consider his claims for relief that arise as a direct result of age discrimination violations—specifically, here, Long's claim for overtime back pay.

The Federal Circuit has exclusive jurisdiction to hear appeals of from final orders of the MSPB in federal personnel matters. *See* 28 U.S.C. § 1295(a)(9); 5 U.S.C. § 7703(a)(1) ("[a]ny employee ... adversely affected or aggrieved by a final order or decision of the Merit Systems Protection Board may obtain judicial review of the order or decision"); 5 U.S.C. § 7703(b)(1) ("a petition to review a final order or final decision of the Board shall be filed in the United States Court of Appeals for the Federal Circuit"). But this jurisdiction does not extend to claims of discrimination under the Civil Rights Act, Age Discrimination in Employment Act, or Fair Labor Standards Act; judicial review in that type of case is available only in the appropriate district court. 5 U.S.C. §§ 7702 and 7703(b)(2).[4]

---

4. 5 U.S.C. § 7703(b)(2) provides:

(2) Cases of discrimination subject to the provisions of section 7702 of this title shall be filed under section 717(c) of the Civil Rights Act of 1964 (42 U.S.C. 2000e–16(c)), section 15(c) of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 633a(c)), and section 16(b) of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 216(b)), as applicable. Notwithstanding any other provision of law, any such case filed under any section must be filed within 30 days after the date the individual filing the case received notice of the judicially reviewable action under section 7702.

5 U.S.C. § 7702, which defines the discrimination actions within the exception, includes:

(a)(1) ... the case of any employee or applicant for employment who—

(A) has been affected by an action which the employee or applicant may appeal to the Merit Systems Protection Board, and

The interrelationship between Federal Circuit and district court jurisdiction over MSPB appeals is not always clear. For example, the Federal Circuit has held that where an employee alleges both discrimination and non-discrimination claims—in what is known as a "mixed case"—bifurcation is not appropriate and the *entire* action must be brought in the district court. *Williams v. Department of Army*, 715 F.2d 1485, 1491 (Fed.Cir.1983) (en banc). The Fourth Circuit has explained other such "twists on the entangling vine" as follows:

> [T]hough it is a court of sharply limited subject-matter jurisdiction, the Federal Circuit has assumed jurisdiction over what it terms "procedural" or "threshold" issues. These have included waivers of filing deadlines, *Ballantine v. MSPB*, 738 F.2d 1244 (Fed.Cir.1984), whether the MSPB itself had jurisdiction, *id.*, and whether the MSPB appropriately dismissed a request for attorney's fees. *Hopkins v. MSPB*, 725 F.2d 1368 (Fed. Cir.1984). In addition, and perhaps most problematically, the Federal Circuit has assumed jurisdiction where it determines that a facially "mixed" complaint does not actually state a cognizable discrimination claim. *Hill v. Dep't of Air Force*, 796 F.2d 1469 (Fed.Cir.1986).

*Afifi v. United States Dept. of Interior*, 924 F.2d 61, 63 (4th Cir.1991); *see also Wallace v. Merit Systems Protection Bd.*, 728 F.2d 1456, 1458–59 (Fed.Cir.1984) (finding jurisdiction over timeliness of plaintiff's discrimination petition). Finally, in *Kean v. Stone*, 926 F.2d 276, 287 (3d Cir.1991), the Third Circuit found that a plaintiff who had prevailed on a handicap discrimination claim nevertheless belonged in district court on the issues of attorney fees since "the standards that inform civil rights fee awards grow out of the dynamics of civil rights law enforcement" and therefore are "part and parcel of the claim on the merits."

(B) alleges that a basis for the action was discrimination prohibited by—
   (iv) sections 12 and 15 of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 631, 633a).

In this case, the Federal Circuit appeal addressed orders of the MSPB going to awards of overtime pay and remuneration for legal fees; the opinion of that court never discussed the legal basis for plaintiff's claims. Clearly, this court does not have power to review the jurisdiction already exercised by the Federal Circuit. Nevertheless, this court must decide the preclusive effect of the Federal Circuit's prior exercise of jurisdiction on a subsequent discrimination complaint.[5] Several district court cases are instructive. *See, e.g., Collier v. United States*, 720 F.Supp. 75, 78 (W.D.La.1989) (holding final decision of Federal Circuit reviewing MSPB decision to preclude subsequent action in district court), *aff'd without opinion*, 896 F.2d 550 (5th Cir.1990); *Smith v. Horner*, 635 F.Supp. 323, 326 (D.D.C.1986) ("The Federal Circuit declined to dismiss the appeal before it, and this Court will not undertake to define the proper limits of the Federal Circuit's jurisdiction. Therefore, whether or not a bifurcated review is the correct procedure in this case, this Court will not deny plaintiff his opportunity to pursue the merits of his reprisal claim."); *Miller v. Department of Air Force*, 654 F.Supp. 186, 187 (D.Mass.1985) (refusing to give res judicata effect to Federal Circuit decision because that court would not have had jurisdiction over plaintiff's discrimination claim had he raised it there).

■ This court finds that plaintiff's decision to proceed via the Federal Circuit does not preclude him from bringing suit for overtime back pay based on age discrimination claims since those questions were not and could not be considered by the Federal Circuit. The prior decision did not address the merits of plaintiff's claim for overtime back pay under Title VII but only discussed whether the MSPB correctly determined that his claim was not timely; notably, while the same standards for assessing recovery govern actions asserting violations of Title VII and the ADEA, *see Nobler v.*

5. It is worthwhile to recognize that plaintiff Long is proceeding *pro se* and was sent to the Federal Circuit by instructions listed in the MSPB orders.

*Beth Israel,* 715 F.Supp. 570, 571 (S.D.N.Y. 1989) (citing authorities), these two statutes have different limitations provisions. Moreover, the ADEA clearly provides for the relief plaintiff seeks herein. 29 U.S.C. § 626(b) ("In any action brought to enforce [the ADEA] the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or *unpaid overtime compensation* under this section.") (emphasis added). Finally, plaintiff has asserted his age discrimination claims in a timely fashion. The federal catch-all six-year statute of limitations governs federal employees' ADEA claims. *See, e.g., Medwid v. Baker,* 752 F.Supp. 125, 135 (S.D.N.Y.1990). Thus, plaintiff had six years from August of 1982—the date his cause of action accrued—in which to file a civil action under the ADEA. However, since he chose to seek redress from the EEOC, this limitations period was tolled during the administrative proceedings— which ended in December of 1986. In sum, since the issue of Long's entitlement to relief under the ADEA was not raised before the Federal Circuit and, more importantly for res judicata principles, that court did not have jurisdiction to inquire into that claim, plaintiff's action seeking overtime back pay is not barred by res judicata or collateral estoppel.

■ In contrast, this court finds that preclusion principles clearly bar plaintiff's request for direct payment of attorney fees. As mentioned above, on June 12, 1987, the MSPB awarded $6525 in fees pursuant to the Civil Service Reform Act, 5 U.S.C. § 7701(g)(1). (Dudek Decl.Exh. K) Long does not dispute the amount of fees

awarded or claim that his entitlement arises directly out of antidiscrimination statutes; rather, he asserts only that his attorney Mr. Kaplan failed to reimburse him for fees he had already paid during the administrative proceedings. Long presented this identical claim to the Federal Circuit,[6] which correctly cited *Jensen v. Department of Transportation,* 858 F.2d 721, 724 (Fed.Cir.1988), for the proposition that payment of such an award should go directly to counsel rather than to the client. Res judicata therefore bars this court from considering Long's claim for fees.[7] Clearly, he should bring any claim for reimbursement directly against Mr. Kaplan.

### CONCLUSION

Defendant's motion for summary judgment on plaintiff's claim for direct payment of attorney fees is hereby granted on the basis of the doctrine of res judicata. However, defendant's motion for summary judgment on the claim for overtime back pay under the ADEA is denied for the reasons stated above.

SO ORDERED.

---

**6.** It is worthwhile to note that the question of direct payment of attorney fees was properly before the Federal Circuit. The claim did not involve did not involve nor stem from "discrimination" as defined by 5 U.S.C. § 7702; Kaplan represented Long before the Board and was awarded fees under the CSRA.

**7.** Collateral estoppel also would bar plaintiff's suit. The issue presented going to attorney fees is identical to the issue decided by the Federal Circuit and was necessary to the final judgment rendered by that court. *See Beck v. Levering,* 947 F.2d 639, 642 (2d Cir.1991) (discussing requirements for collateral estoppel) (per curiam), *cert. denied,* — U.S. —, 112 S.Ct. 1937, 118 L.Ed.2d 544 (1992).